UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 24-mj-8467-RMM

UNITED STATES OF AMERICA,

                                                 Plaintiff,

vs.

KIMBLE TAVARIS DAVIS,

                                                 Defendant.
_____/

FILED BY _____SP_____ D.C.

Sep 24, 2024

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - West Palm Beach

**CRIMINAL COVER SHEET**

1. Did this matter originate from a matter pending in the Miami Office of the United States Attorney's Office prior to July 20, 2008?

    Yes      X **No**

2. Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office (West Palm Beach Office) only prior to December 18, 2011?

    Yes      X **No**

3. Did this matter originate from a matter pending in the Fort Pierce Office of the United States Attorney's Office prior to August 8, 2014?

    Yes      X **No**

Respectfully submitted,

MARKENZY LAPOINTE
UNITED STATES ATTORNEY

BY: /s/ John C. McMillan
JOHN C. McMILLAN
ASSISTANT UNITED STATES ATTORNEY
Admin. No. A5500228
500 S. Australian Ave., Suite 400
West Palm Beach, FL 33401
Office: (561) 820-8711
John.mcmillan@usdoj.gov

AO 91 (Rev. 08/09)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| | |
|---|---|
| United States of America<br>v.<br><br>KIMBLE TAVARIS DAVIS,<br><br>Defendant(s) | Case No. 24-mj-8467-RMM |

FILED BY ___SP___ D.C.

Sep 24, 2024

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - West Palm Beach

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __06/14/20204__ in the county of __Palm Beach__ in the
__Southern__ District of __Florida__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C) | Possession with Intent to Distribute Controlled Substances; |
| 18 U.S.C. §§ 924(c)(1)(A), 924(c)(1)(C)(i) | Possession of a firearm in furtherance of a federal drug trafficking crime; and |
| 18 U.S.C. §§ 922(g)(1), 924(a)(2) | Felon in Possession of Firearm and Ammunition. |

This criminal complaint is based on these facts:
See attached Affidavit

☑ Continued on the attached sheet.

_____
Complainant's signature

Timothy D. Trenschel, Special Agent, ATF
Printed name and title

Subscribed and sworn to before me in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone (Facetime).

Date: 9/24/24

_____
Judge's signature

City and state:   West Palm Beach, Florida        Hon. Ryon M. McCabe, U.S. Magistrate Judge
Printed name and title

**AFFIDAVIT
BY
SPECIAL AGENT TIMOTHY D. TRENSCHEL
<u>BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES</u>
Case No. 24-mj-8467-RMM**

I, Timothy D. Trenschel, being duly sworn, depose and state that:

**Introduction**

1. I serve as a Senior Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") of the United States Department of Justice, and have been so employed since 2005. Prior to ATF, I was a metro police officer in Lexington, Kentucky for over five years. During my tenure with ATF, I have received specialized training regarding the investigation and enforcement of Federal firearms violations and have conducted over 100 investigations concerning individuals involved in illegal firearms activities, including the illegal possession of firearms by convicted felons and drug traffickers.

2. This affidavit is offered in support of a criminal complaint and arrest warrant for **Kimble Tavaris DAVIS** (hereinafter DAVIS), who on June 14, 2024, committed the Federal criminal violations of: Possessing With Intent to Distribute Controlled Substances in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C); Carrying a Firearm During and In Relation to a Federal Drug Trafficking Crime, in violation of Title 18, United States Code, Section 924(c) and 924(c)(1)(C)(i); and Possession of a Firearm and Ammunition by a Convicted Felon, in violation of Title 18, United States Code, Sections 922(g)(1) and 924(a)(8). Your affiant notes that DAVIS previously pled guilty to this latter statute (18 U.S.C. § 924(c)) related to a 2016 drug trafficking indictment, also investigated by your affiant. As a convicted felon, DAVIS did also commit the Federal criminal violation of Possession of a Firearm and

Ammunition by a Convicted Felon, in violation of Title 18, United States Code, Sections 922(g)(1) and 924(a)(8).

3. This affidavit is based on my own personal knowledge, as well as upon interviews and information received from other law enforcement officers with personal knowledge of the events described below. This affidavit does not include all facts known to me concerning this investigation, but rather, those facts that I believe are necessary to establish probable cause.

## Probable Cause

4. On June 14, 2024, just prior to 3:00 p.m., agents of the West Palm Beach Police Department (WPBPD) were conducting covert surveillance of the southwest corner of 18th Street and North Tamarind Avenue in West Palm Beach, Palm Beach County, Southern District of Florida. WPBPD Sergeant C. Goetz, who was at the scene and is qualified in Federal court as an expert witness in the area of street level narcotics investigations, knows this area to be among the worst areas within the City of West Palm Beach for open-air narcotics sales, and the subject of continual and persisting citizen complaints.

5. In the course of conducting video recorded surveillance of the area, detectives of the WPBPD noted that a group of 5-6 males were loitering on the sidewalk, some of whom were engaging in behavior consistent with street sales of narcotics based on the detectives' experience, and as further described below. They observed one subject, later identified as Kimble DAVIS, wearing a teal-colored hoodie shirt as he exited the residence immediately adjacent to the corner store at this location. Over the course of more than an hour, they observed DAVIS engage in at least 6 suspected hand-to-hand transactions with pedestrians, bicyclists, or vehicle occupants, each of the encounters lasting less than a minute before disengaging, after which DAVIS was often observed placing cash in his wallet.



6. During this same timespan DAVIS was observed taking off the teal-colored hoodie style sweatshirt and hanging it on the fence line as depicted in the surveillance image above, as DAVIS makes a transaction with a bicyclist. Thereafter, DAVIS he went back-and-forth to the teal-colored hoodie hanging on the fence line approximately seven (7) times during the observation period, sometimes putting it back on during brief periods of rain. As depicted in the photographs below, on at least 4 occasions, DAVIS pulled what appeared to be a plastic baggie containing a white substance from the handwarmer pocket of the teal-colored garment (sometimes moving it back and forth to his right front jeans pocket), as though the hoodie functioned as a locker to contain his wares, while providing DAVIS the opportunity to walk away from the hoodie and deny ownership.

7. Also, during this time span, based on your affiant's training and experience, DAVIS could be observed on the video surveillance footage making movements consistent with adjusting a pistol carried in a fashion termed Appendix Inside-The-Waistband (AIWB). Your affiant is aware, based the aforementioned 2016 investigation, that DAVIS commonly carried pistols AIWB in the course of that investigation.

8. On multiple occasions throughout the hour, DAVIS was observed speaking on one of his two phones, sometimes while also holding the narcotics as pictured below. Having previously forensically analyzed the phones of DAVIS in relation to the aforementioned 2016 indictment, your affiant knows DAVIS to employ both his personal phone and what he then-described as his "buddy phone" to facilitate drug sales, as the contents of DAVIS's phones were evidentially instrumental to his Federal armed drug trafficking conviction.




9. Over an hour later, just after 4:00 p.m., and having determined that probable cause existed to believe that DAVIS was actively engaged in the sale of illegal controlled substances, the detectives of the West Palm Beach Police Department conducted a vehicle approach of DAVIS. Upon appearing to perceive the approaching police vehicles, DAVIS immediately attempted to walk away from the teal-colored hoodie (which DAVIS had placed on the fence line) and into the adjacent residence, at which time the police apprehended him. Less than 30 seconds after being apprehended, DAVIS yelled, "Come get my phones" to a nearby female. However, before DAVIS' instructions could be followed, the WPBPD seized the two phones from DAVIS's person.

10. Upon approaching DAVIS, for officer safety purposes, the WPBPD officers asked DAVIS if he possessed any weapons, to which DAVIS responded, "Yeah." Body Worn Camera (BWC) footage revealed that, within a holster in the AIWB position, DAVIS was discovered to be carrying a fully loaded Glock 9mm pistol with 15 rounds loaded into the magazine and 1 round in the chamber.

11. Found within DAVIS's right front jeans' was a clear knotted plastic bag, inside of which were 39 tiny baggies packaged for retail sale containing a white powdery substance which was subsequently tested by the Palm Beach County Sheriff's Office (PBSO) Crime Laboratory and determined to contain a net weight of 8.48 grams of a mixture and substances containing N,N-Dimethylpentylone, a substitute cathinone, a Schedule I controlled substance, commonly termed on the street as "bath salts." DAVIS then requested, "Can she get my wallet?", which was recovered from his back right jeans pocket, and which contained a total of approximately $120, in denominations of $20, $10, $5 and $1 bills, consistent with open-air narcotics sales, to make it easier to make change for the drug users.

12. Approximately 6 minutes later, concerning the teal-colored hoodie that agents had subsequently secured upon the hood of the police cruiser, BWC footage recorded DAVIS remarking, "Whose shit that is there? Why ya'll got that shit right there by me? That ain't my shit," notwithstanding the officer's observations and video recording of the defendant wearing the teal-colored hoodie to his arrest location and being the sole individual repeatedly handling such during the period of surveillance. A search of the handwarmer pocket of the teal-colored hoodie revealed approximately 50 white pills of suspected oxycodone that were contained in a clear sandwich bag, approximately 34 small zip lock baggies which contained an off-white powder, and 7 baggies of a green leafy substance which was suspected to be marijuana. The white pills were

later confirmed by the PBSO Lab as oxycodone, which is a Schedule II controlled substance, with a net weight of 26.5233 grams. The same lab subsequently identified the bags of off-white powder as alpha-PiHP, a substituted cathinone, which is a Schedule I controlled substance with a total net weight of 3.1 grams. The suspected marijuana field-tested positive, with a total package weight of 38.5 grams. All of the seized drugs were packaged in quantities/dosages that are consistent with illegal street sales of controlled substances, based on Sergeant Goetz's training and experience. The seizure of the two phones, the loaded pistol, and the diverse inventory of contraband narcotics compartmentalized into numerous baggies mirror the same circumstances as DAVIS' prior drug trafficking arrest.



13.     Your affiant is aware that on April 15, 2016, defendant DAVIS pleaded guilty and was adjudicated guilty in Case No. 16-80004-CR-RYSKAMP, to a violation of Title 18 United States Code 924(c), Use of a Firearm in Furtherance of Drug Trafficking, which is a felony offense punishable by a term exceeding one year, and was subsequently sentenced to a term of sixty (60) months in Federal prison. During his April 16, 2016, plea colloquy, the Court specifically informed and inquired of DAVIS as follows:

> [THE COURT]:            Do you understand that if your plea is accepted by
>                         the Court, you will be adjudged guilty of a felony

> offense, and that such adjudication may <u>deprive you of certain valuable civil rights</u> such as the right to vote, the right to hold public office, the right to serve on a jury, <u>and the right to possess any kind of firearm</u>? Do you understand that?

(DE 77, at 6 (emphasis added)). In response to the Court's inquiry, DAVIS responded, "Yes, Sir[,]" thus clearly acknowledging his status as a convicted felon who is prohibited from possessing a firearm.

14. On August 2, 2024, an ATF Interstate Commerce Nexus Expert reviewed the Glock firearm and ammunition described herein and determined that the firearm was manufactured outside of the State of Florida and thus by its subsequent recovery therein, of necessity traveled in and affected interstate and/or foreign commerce.

15. WHEREFORE, on the basis of the foregoing, your Affiant respectfully submits that probable cause exists to charge Kimble DAVIS with Possessing With Intent to Distribute one or more Controlled Substances in violation of: Title 21 United States Code, Sections 841(a)(1), 841(b)(1)(C); Carrying a Firearm During and In Relation to a Federal Drug Trafficking Crime, in violation of Title 18, United States Code, Section 924(c) and 924(c)(1)(C)(i); and Possession of a

Firearm and Ammunition by a Convicted Felon, in violation of Title 18, United States Code, Sections 922(g)(1) and 924(a)(8).

FURTHER YOUR AFFIANT SAYETH NAUGHT

_____
Timothy Trenschel
Senior Special Agent, ATF

ATTESTED TO ME TELEPHONICALLY
(VIA FACETIME) BY THE APPLICANT
IN ACCORDANCE WITH THE REQUIREMENTS
OF FED. R. CRIM. P. 4.1 THIS 24
DAY OF SEPTEMBER, 2024.

_____
HON. RYON M. McCABE
UNITED STATES MAGISTRATE JUDGE

8

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name:** Kimble Tavaris DAVIS

**Case No:** 24-mj-8467-RMM

**Count # 1**
**Possession with Intent to Distribute Controlled Substances**
**Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(C)**
* Max. Term of Imprisonment: twenty (20) years
* Mandatory Min. Term of Imprisonment (if applicable): n/a
* Max. Supervised Release: Life
* Max. Fine: $1,000,000.00
* Special Assessment: $100.00

**Count # 2**
**Possession of a Firearm in Furtherance of a Federal Drug Trafficking Crime**
**Title 18, United States Code, Section 924(c)(1)(A) and 924(c)(1)(C)(i)**
* Max. Term of Imprisonment: Life
* Mandatory Min. Term of Imprisonment (if applicable): 25 years' imprisonment consecutive to any other term of imprisonment imposed.
* Max. Supervised Release: Five (5) years
* Max. Fine: $250,000.00
* Special Assessment: $100.00

**Count # 3**
**Possession of Firearm and Ammunition by a Convicted Felon**
**Title 18, United States Code, Sections 922(g)(1), 924(a)(8)**
* Max. Term of Imprisonment: 15 years
* Mandatory Min. Term of Imprisonment (if applicable): n/a
* Max. Supervised Release: Three (3) years
* Max. Fine: $250,000.00
* Special Assessment: $100.00